**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


JGA DEVELOPMENT, LLC and
KINGSWAY BUILDERS, INC.,
a Michigan Corporation,

                    Plaintiffs,

                                                    CIVIL NO. 05-70984

v.                                                  HON. LAWRENCE P. ZATKOFF


CHARTER TOWNSHIP OF FENTON,
a Michigan Municipal Corporation,

                    Defendant.

_____/


**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 9, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE


**I.  INTRODUCTION**

    This matter is before the Court on Defendant's Motion to Dismiss and Motion for Summary

Judgment filed on December 6, 2005.  Plaintiff  has responded to Defendant's motions, and

Defendant has replied to the responses.  The Court finds that the facts and legal arguments are

adequately presented in the parties' papers and the decision process would not be significantly aided

by oral argument.  Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted.  For the reasons set forth below, Defendant's Motion to Dismiss and Motion for Summary Judgment are GRANTED IN PART.

## II.  BACKGROUND

In January of 2000, Plaintiff purchased a 60-acre parcel of land in Fenton Township, Michigan ("the Property").  The Property was zoned R-1A, Single-Family Residential.  This classification permitted residential development at a maximum density of one unit per acre. Contemporaneously with the purchase, Plaintiff submitted an application to rezone the Property from R-1A to a Planned Unit Development ("PUD") that would allow for development at a maximum density of 3.2 units per acre.[1]  The Planning Commission recommended denying the application because the proposed development was too dense, and the Township Board subsequently denied the application.

In July of 2001, Plaintiff again submitted an application to rezone the property from R-1A to PUD.  At a hearing before the Planning Commission on August 14, 2001, Plaintiff proposed to build 138 attached and detached single family units, with a density of 2.5 or 2.33 units per acre. Water would be provided through a community well.  The Commission tabled the proposal for resolution at a later date.

On October 2, 2001, the Planning Commission adopted amendments to the Township Land Use Plan.  One pertinent change involved PUD zoning, and read as follows:

---

[1]Michigan law allows for zoning ordinances to contain "planned unit development" provisions, which give the ordinances the ability to allow for flexible development within a zoning district.  *See* M.C.L. § 125.286c.

2

Those portions of the Medium Density Residential District which have the following characteristics may be considered for residential development up to 2.5 units per acre with 50% open space through the Township's PUD zoning districts:

- Access to sewer
- Access to County Paved Road
- Close to a city or commercial center
- Not adjacent to a river or lake
- Not in an area of concentrated wetlands
- Not in an area where the development will significantly impact the adjacent land uses
- Other criteria determined by the Planning Commission to be relevant to a particular parcel

Defendant's Motion for Summary Judgment at 3.

After again considering Plaintiff's proposed PUD on October 9, 2001, the Planning Commission recommended accepting it. On November 12, 2001, the Township Board approved the PUD in Ordinance No. 585.[2] The PUD allowed for development up to a maximum density of 2.33 units per acre, with 39% of the land remaining as open space.

After the approval of its PUD, Plaintiff met with the Michigan Department of Environmental Quality ("MDEQ") to begin the process of applying for a Type I community well permit. MDEQ authorized Plaintiff to proceed with test well drilling. Plaintiff also began investigating the possibility of looping its well into the water supply of the neighboring city of Linden. However, after drilling three test wells, Plaintiff discovered that there was insufficient water to loop into the Linden system. In early 2004, Plaintiff dug a new test well to determine the feasibility of building a community well solely for the development. The level of arsenic was below the Maximum Contaminant Level (the maximum permissible level for safe drinking water). However, levels of

---

[2]In Fenton Township, PUDs are granted through an amendment to the Zoning Ordinance for the specific property at issue. Ordinance No. 585 specifically addressed Plaintiff and the Property.

iron, chloride, sodium, and "hardness" were above the Secondary Maximum Contaminant Level (the suggested maximum level for desirable water quality). Plaintiff then began to investigate the possibility of purchasing water from Linden.

On December 18, 2002, the Township again amended its Land Use Plan. The maximum permissible density for the medium density residential classification was changed from 2.5 units per acre to 1.5 units per acre. In July 2004, members of the Planning Commission suggested that Plaintiff's PUD should be reexamined, because it had been approved under a Land Use Plan that provided for a higher density than was allowed under the new plan. On July 20, 2004, the Planning Commission adopted a resolution calling for the Property to be rezoned from PUD to R-3, which allows for a maximum density of 1.5 units per acre. An application to rezone was filed, and a hearing on the issue was scheduled for September 14, 2004. Michigan law requires notice of a proposed rezoning to be given at least eight days before the hearing. M.C.L. § 125.284(4). On September 3, the Commission sent a letter to Plaintiff informing them of the hearing. Plaintiff does not allege than it received the letter less than eight days before the hearing.

The hearing before the Planning Commission was held as scheduled on September 14, 2004. Plaintiff explained that the delay in development was due to the problems it encountered when trying to establish a water supply for the development. The Commission found that the only reason for the delay in development was Plaintiff's unwillingness to build a community well, and desire to purchase water from the Linden. The Commission voted to recommend rezoning to the Township Board.

Plaintiff requested, and received, two adjournments of the hearing regarding the proposed rezoning before the Township Board. The hearing was held on October 18, 2004. The Planning

4

Commission stated that it initiated the rezoning because the density allowed by the PUD no longer conformed to the Township's Land Use Plan, and no site plan had been submitted since the Property was rezoned to PUD in 2001. Plaintiff stated that the primary focus of its efforts towards development had been obtaining a water supply, and that it had spent over $130,000 in these efforts. One of the Trustees mentioned problems with one of Plaintiff's previous developments, which petitioned for annexation into Linden over water issues. In response, Plaintiff stated that it had no desire to annex the Property into Linden. The Board heard from several residents who expressed concerns over the density allowed by the current PUD, and its potential impact on the roads and sewers. The residents recommended that the Property be rezoned to R-3. No residents spoke in favor of the proposed development. On November 1, 2004, the Board voted to rezone the Property to R-3. On February 14, 2005, Plaintiff brought suit in Genessee County Circuit Court. Defendant removed the case to this Court on March 14, 2005, on the basis of federal question jurisdiction.

## III.  LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

5

(1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment

may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its

motion and identifying those portions of the record that establish the absence of a genuine issue of

material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has

met its burden, the nonmoving party must go beyond the pleadings and come forward with specific

facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477

U.S. at 324.  The non-moving party must do more than show that there is some metaphysical doubt

as to the material facts.  It must present significant probative evidence in support of its opposition

to the motion for summary judgment in order to defeat the motion for summary judgment.  *See*

*Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

**B.      Dismissal under 12(b)(1)**

Motions to dismiss due to lack of subject matter jurisdiction are governed by FED. R. CIV.

P. 12(b)(1).  When subject matter jurisdiction is challenged, Plaintiff has the burden of proving that

the Court properly has jurisdiction.  *See Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th

Cir. 1986).  The Court has the power to resolve factual disputes when subject matter jurisdiction is

at issue.  *See Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

**IV.  ANALYSIS**

**A.      Ripeness of the Takings Claim**

Defendant, relying on *Williamson County Regional Planning Commission v. Hamilton Bank*

*of Johnson City*, 473 U.S. 172 (1985), argues that Plaintiff's takings claim is not ripe for

adjudication, and should be dismissed under Rule 12(b)(1).  *Williamson County* established a two

6

prong standard to determine if a takings claim was ripe.  First, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."  *Id.* at 186.  Second, a takings claim is not ripe until the property owner seeks "compensation through the procedures the State has provided for doing so."  *Id.* at 194.

Defendant argues that Plaintiff has not obtained a final decision from the Township regarding the precise nature of the development that will be allowed on the Property.  In addition, Defendant argues that Plaintiff has not utilized Michigan's procedures for seeking compensation for the alleged taking.  Therefore, Plaintiff has not met the *Williamson County* standard, and its takings claim is not ripe.

In response, Plaintiff argues that the first prong of the *Williamson County* standard has been met.  Plaintiff claims that the R-3 classification thoroughly defines the full extent of development allowed on the Property, and thus the final decision prong has been met.  Plaintiff implicitly concedes that the second prong has not been met, but argues that the test is prudential, rather than jurisdictional, and there is no reason for the Court to abstain from hearing the case.

The Court need not consider whether the Township has made a final decision regarding the Property sufficient to satisfy the first part of the *Williamson County* test, because the second part, utilization of state compensation procedures,  has clearly not been met.  Plaintiff's argument that the Court can waive the second requirement is unpersuasive.  Plaintiff relies on Chief Justice Rehnquist's concurrence in *San Remo Hotel, L.P. v. City & County of San Francisco*, 125 S. Ct. 2491 (2005).  The concurrence questioned the validity of the second *Williamson County* prong, and

suggested that the Supreme Court reexamine it. *Id.* at 2510 (Rehnquist, C.J., concurring). However, until the Supreme Court overrules *Williamson County*, this Court is bound to follow it. Pursuant to *Williamson County*, The Sixth Circuit requires Michigan plaintiffs to pursue a state inverse condemnation action to satisfy the ripeness requirement. *See Seguin v. Sterling Heights*, 968 F.2d 584, 588 (6th Cir. 1992); *Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154, 158 (6th Cir. 1992). Since Plaintiff has not pursued an inverse condemnation action in Michigan state court, its takings claim is not ripe for adjudication in this Court, and must therefore be dismissed without prejudice.

Plaintiff also claims that Defendant's removal of this case to federal court constitutes a waiver of the ripeness issue. Plaintiff relies on *Lapides v. Board of Regents of the University of Georgia*, 535 U.S. 613 (2002), which held that a state waives its sovereign immunity defense when it removes an action to federal court. However, the Sixth Circuit has expressly refused to extend *Lapides* beyond the sovereign immunity context. *Dantz v. Am. Apple Group, LLC*, 123 Fed. Appx. 702, 707 (6th Cir. 2005). Furthermore, the Sixth Circuit has affirmed the dismissal of takings claims on ripeness grounds when the defendants removed the action to federal court. *See Martin v. Jefferson County*, No. 94-6511, 1996 U.S. App. LEXIS 6121 (6th Cir. 1996); *Michigan Chrome & Chem. Co. v. City of Detroit*, Nos. 92-1694/1916, 1993 U.S. App. LEXIS 28028 (6th Cir. 1993). In the instant case, Defendant's "right to remove federal claims is separate and distinct from the question of whether those claims are ripe for adjudication." *Seiler v. Charter Twp.*, 53 F. Supp. 2d 957, 962 (E.D. Mich. 1999). Since Plaintiff's takings claim is not ripe, it must be dismissed without prejudice.

**B.      Ripeness of the Procedural Due Process, Substantive Due Process, and Equal Protection Claims**

8

Defendant argues that Plaintiff's procedural due process, substantive due process, and equal protection claims are also not ripe for adjudication. Defendant relies on *Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154 (6th Cir. 1992). The plaintiffs in *Bigelow* brought a takings claim based on the cancellation of their fishing licenses by the state. The plaintiffs also brought a procedural due process claim, because they did not have an opportunity to defend their fishing rights before they were taken. The Sixth Circuit held the plaintiffs' takings claim was not ripe, since they had not utilized the state's inverse condemnation procedure. *Id.* at 158. In addition, because the procedural due process claim was ancillary to the takings claim, it was also dismissed on ripeness grounds. *Id.* at 160. The Sixth Circuit has subsequently held that substantive due process and equal protection claims that are ancillary to a takings claim are also subject to the *Williamson County* ripeness requirements. *See Peters v. Fair*, 427 F.3d 1035, 1037 (6th Cir. 2005); *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002). Defendant argues that Plaintiff's procedural due process, substantive due process, and equal protection claims are ancillary to the takings claim, and are thus not ripe for adjudication.

In response, Plaintiff relies on *Nasierowski Brothers Investment Company v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991). In *Nasierowski*, the plaintiff purchased some property in reliance on the city's representations that he would be allowed to undertake his proposed development. However, the city subsequently changed the zoning on the property to prohibit the development, without giving any prior notice to the plaintiff. The plaintiff brought suit, alleging, *inter alia*, a violation of procedural due process (the plaintiff did not bring a takings claim). The district court that held the plaintiff's procedural due process claim did not meet the *Williamson County* ripeness requirements. *Id.* at 893. However, the Sixth Circuit reversed. The *Nasierowski*

9

Court held that the *Williamson County* ripeness requirements were not applicable, since the changing of the plaintiff's zoning "was an act that in and of itself inflicted immediate injury on [the plaintiff]." *Id.* at 895.

Defendant argues that the instant case differs from *Nasierowski* because Plaintiff made a takings claim along with due process and equal protection claims. Thus, unlike *Nasierowski*, the instant case does not involve "pure" due process and equal protection claims, and all the claims are subject to the *Williamson County* ripeness requirements. There is some support for the argument that a due process claim, ripe standing alone, may become unripe when joined with a takings claim. *The Bigelow* Court, which ultimately held that the plaintiffs' joined due process and takings claims were unripe, noted that "[s]tanding alone, the plaintiffs' procedural due process claims might be ripe for review." *Bigelow*, 970 F.2d at 159.

However, *Bigelow* does not stand for the proposition that a due process or equal protection claim automatically becomes unripe when joined with an unripe takings claim. In *Seguin v. City of Sterling Heights*, 968 F.2d 584 (6th Cir. 1992), the plaintiffs brought procedural due process, equal protection, and takings claims after the zoning on their property was changed. The Sixth Circuit held that the takings and equal protection claims were unripe, but that the procedural due process claim was ripe. The Court noted that "the plaintiffs' injury occurred when the City Council passed the zoning ordinance. It was at that time that the plaintiffs were first subjected to procedures which they claimed violated the Due Process Clause." *Id.* at 589. *Bigelow*, decided less than a month later, did not overrule *Seguin*. The *Bigelow* Court noted that *Seguin* and *Nasierowski* held that the *Williamson County* ripeness requirements do not apply to procedural due process challenges to a zoning ordinance. *Bigelow*, 970 F.2d at 159. The Court also affirmed *Nasierowski's* holding that

10

*Williamson County* does not apply "when the denial of procedural due process itself creates an injury." *Id.* at 160.

Thus, the crucial question is whether the due process and equal protection claims are truly independent claims, or are ancillary to the takings claim. The *Williamson County* ripeness requirements only apply if the claims are ancillary. Factors to consider are whether the claims stem from an immediate and concrete injury, arise from the same nucleus of facts as the takings claim, or are an attempt to circumvent the ripeness requirement. *See Nasierowski*, 949 F.2d at 894; *Ardire v. Rump*, No. 92-4204, 1993 U.S. App. LEXIS 17220, *14 (6th Cir. 1993); *Bigelow*, 970 F.2d at 160.

The Court finds that the facts in this case are closer to *Nasierowski* than to *Bigelow*. Plaintiff has suffered an immediate and concrete injury: the loss of its ability to proceed with planning according to the PUD. The *Nasierowski* Court noted that "the Council's passage of the new zoning ordinance, with Rice's amendment, was an act that *in and of itself* inflicted immediate injury on Nasierowski." *Nasierowski*, 949 F.2d at 895 (emphasis in original). Defendant argues that Plaintiff did not spend as much effort on development as the plaintiff in *Nasierowski*. However, this argument merely goes to the degree of the injury. Plaintiff's injury may not be as great as the injury suffered by the plaintiff in *Nasierowski*, but Plaintiff has nevertheless suffered an immediate and concrete injury: the loss of its right to proceed under its PUD zoning.

Furthermore, as Plaintiff notes, the due process and equal protection claims are conceptually distinct from the takings claim. It would be possible for Defendant to rezone Plaintiff's property in a way that would violate Plaintiff's due process rights, but not sufficiently decrease the value of the property to support a takings claim. Likewise, the rezoning could sufficiently decrease the value

11

of the property to support a takings claims, and yet be done in a manner that comported with due process.

Defendant counters that Plaintiff is not only claiming a taking with regards to the decrease in value of the Property, but with regards to the revocation of its PUD. The takings claims regarding the PUD, and the due process and equal protection claims all stem from the same nucleus of facts. Thus, the due process and equal protection claims are ancillary to the takings claim.

The Court finds this argument unpersuasive. The analysis of the takings claim will involve different facts than the analysis of the due process and equal protection claims. The due process and equal protection claims will turn on whether Plaintiff was given notice and an opportunity to be heard, and how similarly situated persons were treated. In contrast, the takings claim will turn on the value of the PUD, and whether Plaintiff was due compensation for its revocation.

In addition, it does not appear that Plaintiff's due process and equal protection claims are an attempt to circumvent the ripeness requirement. In *Bigelow*, the loss of the fishing licenses was a *fait accompli*; the key issue was whether the plaintiffs had been properly compensated for them. The compensation sought under the due process claim was ancillary to that sought under the takings claim. In the instant case, however, Plaintiff does not merely seek compensation, but the return of its rights under the PUD. The first relief Plaintiff seeks is that the Court:

> Enjoin the Township from interfering with the Plaintiff's reasonable development of its Property under the conditions approved in the PUD ordinance, or otherwise interfering with the Plaintiff's reasonable use of its land.

Plaintiff's Complaint at 31. Furthermore, in the 121 paragraphs of Plaintiff's complaint, only 7 deal with the takings claim. Plaintiff's Complaint is focused on its due process and equal protection claims, and regaining its rights under the PUD. Clearly, Plaintiff's due process and equal protection

12

claims are not an attempt to circumvent the ripeness requirement.

For all the above reasons, the Court finds that Plaintiff's due process and equal protection claims are not ancillary to the takings claim, and thus are ripe for adjudication.

**B.      Merits of the Procedural Due Process and Substantive Due Process Claims**

*1.      Property Interest*

Defendant argues that Plaintiff's procedural and substantive due process claims cannot stand because Plaintiff lacked a property interest in its PUD.  A plaintiff must possess a property interest to assert procedural and substantive due process claims under the Michigan and United States Constitutions.  *See Hamby v. Neel*, 368 F.3d 549, 557 (6th Cir. 2004); *Michigan Educ. Ass'n. v. State Bd. of Educ.*, 163 Mich. App. 92, 98 (1987).  Property interests are determined by "existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Defendant argues that under Michigan law, property owners do not have an inherently vested property right in the zoning of their property.  This assertion is correct: to obtain vested property rights in a zoning classification, the owner must have obtained a building permit and begun construction.  *Schubiner v. West Bloomfield Township*, 133 Mich. App. 490, 501 (1984).  This standard is strictly applied; "[t]he making of preparatory plans, landscaping, and the removal of an existing structure is not sufficient" to confer vested rights.  *Id.*  Defendant argues that because Plaintiff did not apply for a building permit or begin construction, it did not acquire vested property rights in its PUD zoning.

However, Defendant's argument ignores the fact that the PUD zoning in this case is a

13

particularized type of zoning, and has characteristics not found in a typical zoning ordinance. Defendant's zoning ordinance states that:

> Approval of the conceptual PUD plan shall confer upon the owner the right to proceed through the subsequent planning phase for a period not to exceed three (3) years from date of approval. If so requested by the petitioner, an extension of a two (2) year period may be granted by the Planning Commission.

Plaintiff's Response to Defendant's Motion for Summary Judgment, Exh. U.

Defendant argues that the approval of the conceptual PUD does not automatically grant a owner the right to begin the actual development. This assertion is correct; the owner must continue through a detailed approval process after the initial approval of the conceptual PUD. However, while final approval is not guaranteed, the ordinance does provide the owner with the right to *proceed through the subsequent planning phase*. The owner's ability to proceed does not depend on the Planning Commission's unrestricted discretion; the owner is granted a right to proceed through the process for a period not to exceed three years. Thus, Plaintiff had a property interest in its PUD, because the PUD gave Plaintiff the right to proceed through the planning phase. By revoking Plaintiff's PUD, Defendant took away this right.

Defendant argues that if the ordinance is interpreted as granting Plaintiff a property interest, the Township would be permanently prevented from exercising its legislative right to zone property. However, this argument lacks merit. Because the right to proceed is limited to three years, the Township would have complete discretion to revoke the PUD after that period. Alternatively, the Township could revoke the PUD before the expiration of the three year period, provided it proceeded in a manner consistent with the owner's due process rights.

Defendant also argues that Plaintiff did not have a property interest in its PUD based on the timing of the rezoning. Plaintiff's PUD was granted on November 12, 2001. The Property was

14

rezoned on November 1, 2004, eleven days before the expiration of the three year period.  Defendant argues that it would have been impossible for Plaintiff to obtain final site approval and building permits, and to begin construction before the expiration of the three year period.  This argument is unpersuasive; Defendant's pragmatic observations do not alter the language of the ordinance.  The ordinance does not give the Planning Commission the discretion to revoke a PUD based on its opinion that an owner will not have time to meet the requirements.  Rather, the owner is given the right to proceed for a period not to exceed three years.

Since Plaintiff had a property interest in its PUD, the Court must now proceed with a procedural and substantive due process analysis.  The same analysis applies to due process claims made under the Michigan and United States Constitutions.  *Lucas v. Monroe County*, 203 F.3d 964, 972 (6th Cir. 2000).

    2.    *Substantive Due Process Claim*

The standard of review used to evaluate Plaintiff's substantive due process claim depends on whether the rezoning is characterized as a legislative or administrative action.  *Pearson v. Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992).  Since the rezoning in the instant case involved a single piece of property and affected only one owner, it should most likely be considered an administrative action.  *Id.*  However, the Court need not decide the issue.  The legislative standard is more deferential; thus, an action that survives the administrative standard will survive the legislative standard.  *Id.*  Because the Court finds Defendant's action survives the administrative standard, the action need not be characterized as administrative or legislative.

To prevail under the administrative standard, Plaintiff must show that Defendant's action was "arbitrary and capricious," and not supported by any "rational basis."  *Id.*  The Sixth Circuit has

15

noted that federal courts should only make a limited review of the evidence, and has admonished

against having federal juries "sit as local boards of zoning appeals." *Id.* at 1222. The Sixth Circuit

has also held that:

> [I]t is extremely rare for a federal court properly to vitiate the action of a state
> administrative agency as a violation of substantive due process. The vast majority
> of such attacks may readily be disposed of on summary judgment, as in the case at
> bar, thus keeping interference by federal courts with local government to a salutary
> minimum.

*Id.* Based on a review of the facts of the instant case, the Court finds that Defendant's action had

a rational basis.

The Planning Commission sought the rezoning of Plaintiff's land because Plaintiff's PUD

was not in conformance with the current Land Use Plan. At the hearing, the Board heard from six

area residents who opposed the proposed development, and supported the rezoning. Residents stated

that the initial granting of the PUD was a mistake, and expressed concerns regarding the proposed

development's impact on water, roads, and sewers. The Court finds that the Land Use Plan and the

concerns raised by local residents provided a rational basis for the rezoning. Thus, Plaintiff's

substantive due process claim fails as a matter of law.

### 3. *Procedural Due Process Claim*

The Sixth Circuit has noted that "[p]rocedural due process generally requires that the state

provide a person with notice and an opportunity to be heard before depriving that person of a

property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). Under

Michigan law, notice of a proposed zoning must be made not less than eight days before the hearing.

M.C.L. § 125.284. Plaintiff does not allege that it received notice of the proposed rezoning less than

eight days before the Planning Commission hearing on September 14, 2004. However, Plaintiff

claims that the notice was vague and did not give reasons for the rezoning, thus depriving Plaintiff of the ability to prepare a defense.

The Court finds this argument unpersuasive. First, M.C.L. § 125.284 does not require particularized reasons to be given in the notice. Second, the subject of the meeting on September 14, 2004, was whether the Planning Commission would recommend that the Property would be rezoned, not whether the Property would actually be rezoned. The actual rezoning of the Property was considered at the Township Board meetings on October 18, 2004, and November 1, 2004. Since the reasons for rezoning the Property were discussed at the meeting on September 14, Plaintiff had more than a month to prepare a response before the actual rezoning hearings took place.

Plaintiff does not deny that it was given an opportunity to be heard at the meetings. However, Plaintiff argues that the hearing was meaningless because the Board was biased against it. Plaintiff notes that five out of the seven Board members were known to oppose Plaintiff's PUD, and one Board member also served on the Planning Commission, and had voted to recommend the rezoning of the Property. Plaintiff argues that this was akin to "a traffic cop sitting as the judge in traffic court."

However, this analogy ignores the reality that there are fundamental differences between the rights of a criminal defendant, which are guaranteed by the Constitution, and property rights, which are to some extent subject to the political process. State and local governments have broad authority to regulate an owner's property rights through the political process. Of course, the government may have to pay for what it has taken, but, as noted above, this is a conceptually different issue from that of due process.

Based on Plaintiff's argument, if an individual publicly opposed a zoning classification, and

17

was then elected to a township board, he would be barred from participating in a zoning decision because of his "bias." This is clearly not the case. The Supreme Court has noted that a decision maker is not "disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute." *Hortonville Joint School District. v. Hortonville Educ. Ass'n.*, 426 U.S. 482, 293 (1976). Furthermore, as Defendant points out, Michigan law specifically allows one member of the Planning Commission to also be a member of the Zoning Board. M.C.L. § 125.33.

Due Process does not require officials to operate in an objective vacuum, i.e., to disregard either their prior political stances or the views of their constituents. In the instant case, Plaintiff was given an opportunity to present its views at a hearing before the Township Board. The Board also heard from other members of the community who opposed Plaintiff's position. The Board decided to accept the position of Plaintiff's opponents. Of course, government officials may not persecute individuals with arbitrary and capricious decisions, but, as discussed above, there were rational reasons for the Board's decision. If Plaintiff does not like the result, it can seek to reverse the decision through the political process. Plaintiff can also pursue an state inverse condemnation action. However, the fact that members of the Board had previously opposed Plaintiff's PUD does mean that Plaintiff's due process rights were violated. Since Plaintiff received notice and an opportunity to be heard, its procedural due process claim fails as a matter of law.

**D.    Merits of the Equal Protection Claim**

The Equal Protection Clause of the Michigan Constitution is coextensive with that of the United States Constitution. *Crego v. Coleman*, 463 Mich. 248, 258 (2000). The standard of review given to an equal protection claim depends on the classification involved. *Id.* at 259. In the instant case, Plaintiff does not claim to be a member of a protected class. Rather, Plaintiff is proceeding

18

under the "class of one" theory annunciated in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). To succeed under this theory, Plaintiff must show that it was treated "differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren*, 411 F.3d at 710.

Plaintiff argues that it was treated differently than two other similarly situated developers, Harrold and Daystar. Like Plaintiff, Harrold and Daystar both received PUD zoning that allowed for higher density development, Harrold in 2001 and Daystar in 1999. In 2004, Harrold's property was rezoned along with Plaintiff's. However, Harrold's property was not rezoned to R-3, but to another PUD, albeit one with reduced density (2.4 units per acre to 1.9). Daystar's property was not rezoned.

Defendant argues that Harrold and Daystar are not similarly situated, because they proceeded with the process to obtain site plan approval. Plaintiff counters that Harrold's final site plan had expired, and Daystar's preliminary site plan had expired. Therefore, from a functional standpoint, Plaintiff, Harrold, and Daystar were in the same position. The Court need not decide whether Plaintiff was similarly situated to Harrold and Daystar, however, because Plaintiff cannot show that there was no rational basis for Defendant's action.

Plaintiff may show lack of rational basis by disproving "every conceivable basis which might support the government action or demonstrating that the challenged government action was motivated by animus or ill-will." *Warren*, 411 F.3d at 711 (quotation omitted). In *Warren*, the defendant had erected barriers which blocked access to the drive-through window at the plaintiff's Dairy Queen. The district court found the defendant violated the plaintiff's procedural due process and equal protection rights. The Sixth Circuit affirmed the procedural due process holding, because

19

the plaintiff did not receive a hearing.  *Id.* at 709.  However, the Sixth Circuit reversed the equal

protection ruling.  The Court held that:

> Here, despite the district court's ruling and appellees' arguments, the Warrens cannot negative all the bases upon which the City's act was premised. The City acted in response to numerous complaints from Sunset Drive residents who were concerned about traffic congestion and safety. Surely, responding to these concerns, which were legitimate state interests, constituted at least one conceivable basis for the placement of the barricades.

*Id.* at 711.

Similarly, in the current case Defendant responded to complaints from area residents.  The

residents stated concerns over the impact on water, roads, and sewers, and expressed their desire to

have the Property rezoned.  Minutes of Fenton Board of Trustees Meeting of October 18, 2004, at

4.  As in *Warren*, the residents' concerns constitute a conceivable basis for Defendant's actions.

Plaintiff also argues the Defendant's action was motivated by animus.  One of Plaintiff's

other developments, Owen Road, obtained water from the city of Linden, and subsequently applied

for annexation into Linden.  Plaintiff alleges that Defendant's action of rezoning the Property was

in retaliation for Owen Road.

The Court finds this argument unpersuasive.  It is true that there was a connection between

the Owen Road development and the rezoning of the Property.  At the meeting on October 18, 2004,

one of the Board members expressed concern that the Property was a "mirror image of the Owen

Road property."  Minutes of Fenton Board of Trustees Meeting of October 18, 2004, at 3.  However,

Plaintiff has not provided any evidence showing that the connection was due to an arbitrary animus.

Rather, the evidence shows the connection was made due to the similarity of issues.  Plaintiff's

conceptual plan, which was approved with the initial PUD zoning, showed that water would be

provided by a community well on the Property.  Plaintiff subsequently attempted to purchase water

20

from Linden.  It was not irrational for the Board to be concerned that Plaintiff would subsequently

petition for annexation into Linden, as it had with the Owen Road property.

Since there was a rational basis for Defendant's action, Plaintiff's equal protection claim fails

as a matter of law.

**E.      § 1983 Claim**

As Defendant notes, Count VIII, Plaintiff's § 1983 claim, does not constitute a separate

claim, but is the mechanism for Plaintiff's due process and equal protection claims.  Since those

claims fail as a matter of law, the § 1983 claim must be dismissed as well.

**F.      Violation of the TZA, Breach of PUD Agreement, and Exclusionary Zoning**

Counts I, II, and V are based upon state law.  28 U.S.C. § 1367(c)(3) states that a district

court may decline supplemental jurisdiction over a pendent state law claim when it has dismissed

all federal claims.  In the instant case, Plaintiff's federal claims have all been dismissed, and the

Court finds that Plaintiff's remaining state law claims would more appropriately be resolved in state

court.  Therefore, Plaintiff's claims of violation of the TZA, breach of PUD agreement, and

exclusionary zoning are remanded to Genesee County Circuit Court.

## V.  CONCLUSION

For the above reasons, Defendant's Motion to Dismiss and Motion for Summary Judgment

are GRANTED IN PART.  Counts III, IV, VII, and VIII (procedural due process, substantive due

process, equal protection, and § 1983) are dismissed with prejudice.  Count VI (takings) is dismissed

without prejudice.  Counts I, II, and V (violation of the TZA, breach of PUD agreement, and

exclusionary zoning) are remanded to Genesee County Circuit Court.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 9, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 9, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290

22